56 CCPA
**Application of Edwin H. LAND.**

**Patent Appeal No. 8165.**

United States Court of Customs and Patent Appeals.

June 26, 1969.

William D. Roberson, Cambridge, Mass., attorney of record, for appellant. Donald R. Dunner, Lane, Aitken, Dunner & Ziems, Washington, D. C., of counsel.

Joseph Schimmel, Washington, D. C., for the Commissioner of Patents. Fred W. Sherling, Washington, D. C., of counsel.

Before RICH, Acting Chief Judge, HOLTZOFF and McLAUGHLIN, Judges, sitting by designation, and ALMOND and BALDWIN, Judges.

RICH, Acting Chief Judge.

This appeal is from the decision of the Patent Office Board of Appeals, adhered to on reconsideration, affirming the rejection of claims 25, 26, and 28–32 of application serial No. 138,342, filed September 15, 1961, for "Method and System for Producing and Viewing Images." No claim is allowed.

The invention relates to the art of stereoscopy or three-dimensional image formation. The perception of depth or three-dimensionality of a scene depends principally on one's ability to assimilate the visual information perceived by his two spaced-apart eyes looking at a common scene. To simulate this depth effect by means of photography, two separate images are typically taken of a single scene from two spaced-apart viewpoints. To present these separate images for stereoscopic viewing, it is necessary to insure that the left eye of the observer sees only one of the images while the right eye sees only the other image.

One way of accomplishing this is to render the two superimposed images in terms of different colored light; thus, the left eye image may be rendered in green and the right eye image in red. By placing a green filter in front of the left eye and a red filter in front of the right eye, the images are separated and presented each to the intended eye. A stereoscopic image in which the components are differently colored and viewed through differently colored filters is referred to as an anaglyph.

Another technique for separating two stereoscopically related images and presenting them to respective eyes involves the use of polarized light. According to this technique, the filterable quality between the two images is not color but the polarization angle of the light employed

for each image. Thus, when appropriately oriented sheet polarizers are placed before the separate eyes of the observer, the two projected, stereoscopically-related images are separated and each is directed to one of the eyes.

Appellant tells us that anaglyphs and polarized viewing systems have one common characteristic; when stereoscopically related images are superimposed and viewed with the *unaided* eye (i.e., no color or polarizing filter), the observer sees both images as a somewhat blurred composite image.

Appellant's invention is a viewing system useful for projecting stereoscopic images and for viewing images both stereoscopically and nonstereoscopically at the same time and on the same image area. Although the light employed in the formation of both of appellant's images is visible light, one of the image components is deliberately projected in light *so much brighter* than the other that, when the two components are viewed with the *unaided* eye, the brighter component overpowers the less brilliant image component and renders it substantially invisible. Appellant's specification indicates that a satisfactory ratio of brightness is provided when the less brilliant image is accorded approximately only 5% to 30% of the brightness of the brighter image. With *unaided* vision both eyes see only the brighter of the two image components, are insensitive to the less bright component, and therefore see only a two-dimensional image.

To create the three-dimensional effect, it is necessary for the two image components to differ from one another not only in intensity but also in a filterable quality such as, for example, the polarization angles of the light employed in the formation of the image components. Because of this filterable quality, it is possible with the use of a filter to discriminate against one of the two image components—the brighter one —and to permit light from the less bright image component to pass through substantially unaltered. The single discrim-

inating filter is monocular; that is, it is placed before only one eye of the viewer. The eye before which this filter is placed then sees only the less bright component, which, to that eye, is no longer obscured by the more brilliant image component because the filter is suppressing it. Meanwhile the other eye, not equipped with a discriminating filter, perceives only the brighter image component, thus fulfilling the necessary criteria for stereoscopic vision. In the practice of appellant's invention, both image components may be in full color or both may be black-and-white, or one may be in full color and the other black-and-white.

Claim 25 is representative of the claims on appeal and reads (emphasis ours):

25. The method of providing a composite image visible to both eyes as a single image, but containing separately provided and relatively different left- and right-eye image components, each of which is rendered in visible light, comprising the steps of:

forming a first image component in visible light at an image plane, and

forming at said image plane in superposed relationship to said first image component a second image component related to said first image component in visible light *of substantially lesser intensity* than that of said first image component *such that the unaided vision is capable of perceiving substantially only said first image component,* the second image component being obscured by the greater intensity of the first image component,

the quality of the light employed for the formation of said first and second image components differing essentially by a substantial filterable factor, and

interposing before only one eye of a viewer a discriminating filter passing visible light from the second of said image components and blocking light from the first and brightest of said image components to render each

of said image components visible to a separate eye of the viewer.

### The Rejection

The references relied on are:

Rogers    British Patent    Nov. 14, 1951
660,994
Land    U. S. Patent    July 14, 1942
2,289,714

Rogers is relied on for its disclosure of a method of producing and viewing a particular type of anaglyph. This method involves preparing a first image *representative of* the *blue-colored components* of an object as seen from a first viewpoint, preparing from a second viewpoint at least two images which are respectively *representative of* the components of the object whose colors are *other than blue* (e.g., red and green), preparing a positive copy of the first image dyed or printed in *yellow* (the compliment of blue), preparing a positive copy of *each* of the other images dyed or printed in a color *complimentary to that of the color component it represents* (e.g., cyan and magenta which are respectively complimentary to red and green), and then superimposing said positive copies in substantially registered relationship to produce an image of the object. This technique of superimposing positive copies printed in colors complimentary to the original color component represented is known as a "subtractive color process."

Rogers discloses two ways in which his anaglyph may be viewed stereoscopically. In the one upon which the Patent Office relies, a *blue* filter is placed over one eye and the other eye is left unobstructed. With respect to this manner of viewing the anaglyph, Rogers contains the following disclosure, the interpretation which should be given it being vigorously disputed, as hereinafter discussed:

> With such an arangement the other [*unobstructed*] eye may then be allowed to view *all* the colour-separation images of the anaglyph [i.e., the *yellow*, cyan, and magenta images] with resultant enhanced colour fidelity while still providing a full stereoscopic effect.
>
> The reason for this is that the blue element (or *yellow* printer) image then plays an ambivalent role in that it *provides its usual colour information* to the *unobstructed* eye and thus *provides a full natural coloured impression to such eye* while performing its stereoscopic guiding function through the other eye. The blue element image [yellow printer] when viewed by the *unobstructed* eye is of *low contrast* compared with the red and green element images, (cyan and magenta printers), which are of high contrast, and such eye is thus guided by the red and green element images when considering the outline of the object. The *blue filter eye*, on the other hand, cannot see the red and green element images [because only blue light passes through the blue filter] whereas the yellow printer image now appears of greatly increased contrast [essentially black] through the blue filter [because the yellow printer absorbs all blue light] and for stereoscopic purposes the eye takes such yellow printer as its guide. The two eyes thus fuse the two viewpoints stereoscopically. On account of its relatively *lower intensity* the blue element image *seen through the filtered eye* has been found not to disturb the colour balance of the full colour image seen through the unobstructed eye. [Emphasis ours.]

The Land patent is cited only as a secondary reference for its teachings of (1) the equivalence of three and two component stereoscopic systems and (2) the use of viewing polarizers as discriminatory filters in stereoscopic systems. Since appellant and the solicitor agree that "the issues on this appeal relate solely to the correctness of the use of the Rogers patent," we need not discuss Land further.

The examiner stated the rejection and his reasoning as follows:

> Claims 25, 26 and 28–32 are not seen as being patentable over Rogers,

taken alone or considered * * * with Land (35 U.S.C. 103). * * * Rogers * * * teaches the formation of superimposed first and second stereoscopic images in visible light at an image plane. *Rogers' blue image,* coresponding to the second image claimed, *is of substantially lesser light intensity as compared to the first image, being specifically described as "a dim image"* [1] * * * *and as being of "relatively lower intensity"* * * *. This reduced intensity of the first image enables unaided vision of substantially only the second or brighter image. When viewed stereoscopically, a single discriminating filter is placed before the eye which is to view the blue image, and this filter blocks the visible light from the second or brighter image. [Emphasis ours.]

After indicating that it found no reversible error in the examiner's holding, the board said:

At the hearing, counsel for appellant contended that the statement * * * [in] the Examiner's Answer:

"This reduced intensity of the first image enables unaided vision of substantially only the second or brighter image."

was an unwarranted assumption on the part of the Examiner.

After a careful reading of the Rogers patent, we find ourselves in agreement with this statement of the Examiner. While there is no statement, in so many words, that this relationship exists, because of the reference to dim images and images of reduced intensity, in the overall effect desired by the patentee, we think that this statement is justified.

After carefully reviewing the entire record and the several briefs, we agree with appellant that Rogers does not teach or suggest the use of two images one of which is so much brighter than the other that it renders the darker image *substantially invisible to the unaided eye,* and further agree that Rogers, taken alone or with Land, does not render obvious appellant's claimed invention. We think it clear that when Rogers' anaglyph is viewed with the *unaided* eye, the yellow, cyan, and magenta all contribute to the color of the anaglyph, and therefore all are visible. It is also clear that it is only when the anaglyph is viewed by the other eye through the blue filter that the yellow printer becomes a "dim image" or becomes of "relatively lower intensity" then the cyan and magenta images which are seen only by the unaided eye. We are further convinced of the correctness of appellant's position by Rogers' disclosure that because the yellow printer image and the combined cyan and magenta images are not superimposed in exact registry, "fringing" occurs in the anaglyph.[2] If, as urged by the examiner, the yellow image were substantially invisible, no fringing would occur.[3]

The decision of the board is reversed.

Reversed.

---

1. The disclosure which mentions a "dim image" reads as follows:

   The visible spectrum is divided unequally, that part to which the human eye has the least sensitivity, i. e. the blue, being reserved for recording one viewpoint, and the remainder being combined to form images from the other viewpoint. In this way, a coloured impression reaches one retina [that of the unaided eye], while a *dim image* giving an outline from the other viewpoint reaches the *other* eye. Because of this *dimness,* the aforemention alteration of attention and colour balance does not occur; combination of viewpoints gives stereoscopy, and *combination of various colours on one retina gives colour.* [Emphasis ours.]

2. Rogers makes some recommendations as to how to reduce this fringing. However, reducing the intensity of one image relative to the others is not one of them.

3. Our study of Rogers indicates that in any area of the anaglyph corresponding to a pure yellow area in the object represented one would see the yellow printer and the yellow printer only. This further demonstrates the incorrectness of the examiner's position.